# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

| ANGELIQUE JENKINS, | : | CIVIL ACTION |
| --- | --- | --- |
| *Plaintiff*, | : | |
| v. | : | |
| | : | |
| SEPTA, | : | |
| *Defendant*. | : | NO. 19-2180 |

## MEMORANDUM

**Kenney, J.**                                                                                                                                                                        **May 10, 2021**

Plaintiff Angelique Jenkins ("Jenkins") pro se brings this employment action against her former employer, Defendant Southeastern Pennsylvania Transportation Authority ("SEPTA"). Jenkins alleges SEPTA retaliated against her and discriminated against her on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"). She also alleges her termination occurred in violation of her procedural due process rights and that she was wrongfully discharged. SEPTA moves for summary judgment on all of her claims, and for the reasons that follow, we will grant its motion in its entirety.

## I. FACTUAL BACKGROUND[1]

SEPTA hired Angelique Jenkins as a bus operator in 2008. Defendant's Concise Statement of Material Facts, ECF No. 52-1 ¶ 1. Throughout her employment with SEPTA, she was represented by Transport Workers Union Local 234 ("the Union") under a Collective Bargaining Agreement ("CBA"). *Id.* ¶ 3. Jenkins alleges she worked for SEPTA without incident until Shwana Rogers became her manager in January 2017. Am. Compl. at 3. Jenkins believed Rogers targeted her with purported customer complaints, which she complained of to Thomas Marcucci, a supervisor. ECF No. 52-2, Ex. A, at 34:11–24. Marcucci told Jenkins Rogers was "a great person"

---

[1] The facts are presented in the light most favorable to Jenkins, the nonmoving party.

and asked Jenkins to give her a chance, which Jenkins agreed to do. *Id.* at 37:2–5. Nothing came of Jenkins' complaint. *Id.* at 38:3.

In March or April 2017, after Jenkins asked the "cleaning girl" for paper towels, and the "cleaning girl" denied her request, explaining "management said we couldn't have them," Jenkins and the "cleaning girl" "had words." Am. Compl. at 3. The "cleaning girl" spoke with Rogers, which prompted Jenkins to "defuse" the situation by speaking with Rogers. Am. Compl. at 3. Jenkins' conversation with Rogers left her in tears. *Id.* She alleges Rogers told her "I use to not like you, but you remind me of a kitten." *Id.* A few weeks later, the "cleaning girl" vacuumed under Jenkins feet as she ate lunch and dust flew into her food. *Id*. On May 16, 2017, Jenkins complained about Rogers to SEPTA's Equal Employment Opportunity/ Affirmative Action Department ("SEPTA's EEOD") for unfair treatment, harassment, improper comments, and targeting her with discharge by planting an undercover supervisor on her bus to catch her in a policy or rules violation. ECF No. 52-4, Ex. P at 24–30; ECF No. 58 at 3 (explaining she made the complaint only against Rogers). After investigating Jenkins' complaint, SEPTA found her allegations of unfair harassment and unfair treatment were not substantiated. *See* ECF No. 52-5, Ex. Q at 2–3.

In April 2017, SEPTA recommended Jenkins' termination for substandard performance and violations of SEPTA rules and policies. *Id.* ¶ 5. The Union intervened on her behalf, filing a grievance and recommending SEPTA reinstate her subject to a Last Chance Agreement per the CBA. ECF No. 52-3, Ex. E. Jenkins signed the Last Chance Agreement on July 6, 2017, which imposed a one-day suspension without pay and a year-long probationary period to begin on May 24, 2017. ECF No. 52-2, Ex. B. The Last Chance Agreement provided that should Jenkins commit any infraction "for which discipline is justified," she would be terminated immediately. *Id.* Jenkins

agreed the Last Chance Agreement would resolve all claims related to her termination, and that the "last step discipline" would remain on her disciplinary record for 730 calendar days. *Id.*

Operating a bus on June 28, 2017, Jenkins allegedly struck a pole. ECF No. 52-5, Ex. S at 7. She did not report the incident or inform SEPTA. *Id.* A foreman discovered unreported damage to the bus, took photos and submitted a report to SEPTA. *Id.* at 7–8. SEPTA requested video and watched the footage on August 2, 2017. On August 4, Jenkins was removed from service. *Id.* On August 8, SEPTA held an Informal Hearing charging her with several violations of SEPTA policy and her Last Chance Agreement. ECF No. 52-3, Ex. G. The Union filed a grievance contesting her proposed discharge arguing that SEPTA had no proof an accident occurred or that Jenkins was at fault for the unreported damage. ECF No. 52-1 ¶ 17; ECF No. 52-5 at 9. A Formal Hearing followed on August 24, 2017. ECF No. 52-5, Ex. S at 7. Discussion about her proposed discharge continued and the parties reached a settlement on January 17, 2018 reinstating Jenkins to her position subject to the Last Chance Agreement. ECF No. 52-3, Ex. H.

In May 2018, Jenkins transferred to a train operator position on the Market-Frankford line. ECF No. 52-1 ¶ 2; Am. Compl. at 4. On February 7, 2019, at 30th Street Station, Jenkins, intending to allow a wheelchair-bound passenger on board, reopened the doors on the wrong side. ECF No. 52-4, Ex. L. at 9. She reported her mistake to the train dispatcher, allowed passengers to leave the train and waited for her supervisor to arrive. *Id.* Jenkins completed an incident report admitting that she opened the doors on the wrong side of the train. ECF No. 52-1 ¶ 30. After investigating, SEPTA again charged Jenkins with violating SEPTA rules and her Last Chance Agreement and proposed her discharge. ECF No. 52-4, Ex. K. The Union again filed a grievance contesting Jenkins' proposed discharge. ECF No. 52-1 ¶ 30. SEPTA held an informal hearing where the Union rejected Jenkins' proposed discharge and requested a formal hearing. *Id.* ¶ 40. At the formal

3

hearing, Jenkins testified that she had committed the infraction, and SEPTA's hearing officer upheld her termination, permitting her to continue to work until the third hearing. *Id.* ¶ 44. At the third hearing, Jenkins again acknowledged her infraction, but argued that SEPTA's equipment facilitated her mistake and claimed SEPTA was looking to discipline her because she had expressed an intent to run for President of the Union. *Id.* ¶¶ 48–49. The hearing officer again upheld her termination. *Id.* ¶ 52.

Jenkins asked the Union to take her case to arbitration, which it refused, explaining "there is no way to win your case in arbitration." ECF No. 52-2, Ex. O at 21 ("SEPTA had 'just cause' to discharge you."). On March 9, 2019, Jenkins filed a charge with the Equal Employment Opportunity Commission ("EEOC") challenging her termination and received a Right-to-Sue letter on April 26, 2019. ECF No. 2 at 10.

Jenkins timely filed her complaint on May 20, 2019.[2] *See* ECF No. 2. SEPTA answered on July 17, 2019, *see* ECF No. 10, and moved for judgment on the pleadings under Rule 12(c). *See* ECF No. 18. We granted SEPTA's motion and dismissed Jenkins' Complaint without giving her leave to amend. *See* ECF No. 22. Jenkins appealed our dismissal. The Court of Appeals for the Third Circuit vacated our judgment and remanded because it could not say "with certainty that amendment would be futile, as Jenkins made some bare allegations…suggesting she *might* be able to state a Title VII claim…" *See Jenkins v. SEPTA*, 801 Fed. App'x. 71 (3d. Cir. 2020) (emphasis in original). On remand, Jenkins filed an amended complaint. *See* ECF No. 29. SEPTA answered her amended complaint and the parties conducted discovery. *See* ECF No. 30. On March 22, 2021,

---

[2] To bring a Title VII suit in Pennsylvania, claimants must first file a complaint with the EEOC within three hundred days of an unlawful employment action. *Selvato v. SEPTA*, 143 F. Supp. 3d 257, 264 (E.D. Pa. 2015), *aff'd*, 658 F. App'x 52 (3d Cir. 2016). The time period for discrete acts—e.g. terminations, failures to hire, failures to promote–begins when the unlawful employment action occurred.

4

SEPTA moved for summary judgment. *See* ECF No. 52. Jenkins responded on April 8, 2021, *see* ECF No. 53. SEPTA replied on April 26, *see* ECF No. 55, and Jenkins filed a surreply on May 3, 2021. *See* ECF No. 58.

**II.     LEGAL STANDARD**

Summary judgment is appropriate when there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law. *See* Fed R. Civ. P. 56(a). The moving party bears the initial burden of proving a lack of any genuine issues of material fact. *See Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 & n. 10 (1986). The nonmoving party must then "come forward with specific facts showing there is a genuine issue for trial." *Id*. (internal citations and quotation marks omitted). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

All facts "should be viewed in the light most favorable to the non-moving party, with all reasonable inferences [drawn] in that party's favor." *Jutrowski v. Township of Riverdale*, 904 F.3d 280, 2988 (3d Cir. 2018) (quoting *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006) (internal quotation marks omitted)). Summary judgment is warranted where the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id*. (internal citations and quotation marks omitted).

We liberally construe pro se filings and pro se civil rights claims to make sure we address the merits. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, on a motion for summary judgment, Rule 56 requires pro se plaintiffs—like represented parties—to point to competent evidence in the record capable of refuting a defendant's motion for summary judgment. *See Dawson v. Cook*, 238 F. Supp. 3d 712, 717 (E.D. Pa. 2017). That a non-movant is proceeding pro se does not relieve her of Rule 56(e)'s requirement to produce evidence that raises a genuine issue of material fact. *Id.*

### III. DISCUSSION

SEPTA seeks judgment in its favor on every claim Jenkins makes in her amended complaint. We construe Jenkins' amended complaint as asserting four claims:[3] 1) gender discrimination in violation of Title VII, 2) retaliation based on Jenkins' gender in violation of Title VII, 3) denial of procedural due process, and 4) wrongful discharge.

**A. Violations of Title VII**

Jenkins alleges gender-based termination and retaliatory termination under Title VII.

    i.    <u>Gender-based discrimination</u>

Jenkins alleges SEPTA discriminated against her on the basis of gender by firing her for opening the doors on the wrong side of the train when male employees were not fired for the same conduct. ECF No. 53 at 3. Title VII provides that employer may not "discharge ... or ... discriminate against any individual with respect to ... compensation, terms, conditions, or privileges of employment because of such individual's ... sex[.]" 42 U.S.C. § 2000e–2(a)(1). Under the burden-

---

[3] SEPTA's brief in support of its motion for summary judgment advocates for judgment in its favor on her claim under the National Labor Relations Act ("NLRA"), to the extent we construe her amended complaint to assert it. ECF No. 52 at 33–34. We do not construe her amended complaint as asserting one, but note that if it did, the NLRA did not cover Jenkins as the employee of a political sub-division. *See Jackson v. Temple Univ. of Com. Sys. of Higher Educ.*, 721 F.2d 931, 933 (3d Cir. 1983); *Crilly v. Southeastern Pennsylvania Transportation Authority*, 529 F.2d 1355 (3d Cir.1976).

shifting schema the Supreme Court established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), a plaintiff must first establish a prima facie case. If she succeeds, the burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action. Then, the plaintiff may counter by showing the employer's proffered reason is a pretext for gender discrimination. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 539 (3d Cir. 2006).

To make out her prima facie case of gender discrimination at the summary judgment stage, Jenkins must present evidence sufficient to show she "(1) is a member of a protected class; (2) was qualified for the position she held; (3) was fired from that position; and (4) suffered adverse action under circumstances that give rise to an inference of discrimination." *Johnson v. St. Luke's Hosp.*, 307 F. App'x 670, 671-72 (3d Cir. 2009). SEPTA does not dispute that Jenkins meets the first three elements of her prima facie burden, but argues that she offers no evidence sufficient to support an inference of discrimination, and even if she does, she cannot establish pretext.

To support an inference of discrimination, employees may present comparator evidence, or "evidence that [the employer] treated 'similarly situated' individuals not within [the employee's] protected class more favorably than it treated [the employee]." *See Darby v. Temple Univ.*, 216 F. Supp.3d 535, 542 (E.D. Pa. 2016) (quoting *Wilcher v. Postmaster Gen.*, 441 F. App'x 879, 881 (3d Cir. 2011)). Employees may also support an inference of discrimination with other evidence, including "evidence of similar [gender] discrimination of other employees, or direct evidence of discrimination from statements or actions by her supervisors suggesting [gender] animus." *Golod v. Bank of Am. Corp.*, 403 F. App'x 699, 702 n.2 (3d Cir. 2010).

The record does not contain evidence sufficient to support an inference of discrimination. Jenkins' opposition brief speculates "[s]everal male employees were either terminated and brought

back or not terminated." *See* ECF No. 53 at 4. Her brief identifies two male employees by name whose disciplinary records she requested in discovery. Jenkins claims the two men were also charged with the same rule violation while on a Last Chance Agreement but remain employed by SEPTA. *Id.* at 3. However, Jenkins has not adduced any evidence showing these two men were similarly situated beyond her bare assertions. No record evidence exists to suggest these men "dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Thompson v. Kellogg's USA*, 619 F. App'x 141, 146 (3d Cir. 2015). Absent any evidence that these men "held similar positions, had similar disciplinary records, were subject to a Last Chance Agreement, or reported to the same decisionmakers when they made these mistakes," we cannot infer that her termination was discriminatory. *See id*.

Aside from her bald assertions about the two similarly situated male employees, Jenkins has no evidence of gender discrimination of other employees, or direct evidence via comments or actions evincing gender animus. Her claim rests on unsupported allegations that "many of the female employees at the depot [complained] about mistreatment after Ms. Rogers became supervisor." *See* Am. Compl. at 3. At this stage, Jenkins' bare allegations do not support the conclusion that SEPTA terminated her under circumstances giving rise to an inference of discrimination. *Cf Mammen v. Thomas Jefferson Univ.*, No. CV 20-0127, 2021 WL 843604, at *13 (E.D. Pa. Mar. 5, 2021) (identifying several gender-based remarks and evidence that women held dissimilar positions). As Jenkins has not established her prima facie case, we will not reach whether a reasonable factfinder could find pretext. Accordingly, Jenkins' claim that she was fired because of her gender does not survive summary judgment.

    ii.    <u>Gender-based retaliation</u>

Title VII forbids employers from retaliating against an employee "because [she] opposed any practice made unlawful by this section ... or because [she] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. 2000e-3(a). We analyze retaliatory termination claims under the *McDonnell Douglas* burden-shifting framework where, as here, the employee relies on circumstantial evidence to infer retaliation. *See Starceski v. Westinghouse Electric Corp.*, 54 F.3d 1089, 1095 n.4 (3d Cir. 1995).

Again, Jenkins bears the burden of establishing her prima facie case. In a retaliatory termination case, she must establish that: (1) she engaged in a protected activity; (2) the employer took a materially adverse action against her; and, (3) there was a causal connection between the protected activity and the employer's action. *Moore v. City of Philadelphia*, 461 F.3d 331, 342 (3d Cir. 2006). SEPTA does not dispute that Jenkins's termination was a materially adverse action. Instead, it asserts that Jenkins cannot establish that she engaged in protected activity or that her purportedly protected activity was causally connected to her termination. *See* ECF No. 52 at 21–24.

    a. *Protected activity*

Jenkins argues that her verbal complaint about her supervisor, Shwana Rogers, to Thomas Marcucci, and her written complaint about Rogers to SEPTA's EEOD were protected activity. SEPTA argues that because neither complaint objected to treatment she experienced *because of* her gender, or any other protected class, her complaints cannot constitute protected activity. *See* ECF No. 52 at 21–22.

"General complaint[s] of unfair treatment" do not constitute protected activity. *See Curay-Cramer v. Ursuline Acad. of Wilmington, Del.*, 450 F.3d 130, 135 (3d Cir. 2006). Rather, to

constitute protected activity, it must be "possible to discern from the context of the [employee's] statement that [she] opposes an unlawful employment practice" *Id*. Jenkins did not allege gender, or any other unlawful discrimination, in her written and verbal complaints. In her complaints, she objected to Rogers' attitude towards her, including the comment that she "use to not like [Jenkins], but [she] remind me of a kitten," and Rogers' attempts to catch her in a policy or rules violation. Significantly, while her complaints objected to unfair treatment, they did not complain of unfair treatment engaged in *because of* a protected characteristic. Thus, we agree with SEPTA, that Jenkins did not engage in protected activity.

### b. Causal connection

SEPTA asserts that Jenkins fails to show that decisionmaker responsible for her termination was aware of her protected activity and fails to present evidence sufficient to support an inference of causation. As a threshold matter, an employee must establish that the decisionmaker responsible for the adverse action was aware of her protected activity when he or she acted. *See Daniels v. Sch. Dist. of Phila*., 776 F.3d 181, 196–97 (3d Cir. 2015) ("The plaintiff, however, cannot establish that there was a causal connection without some evidence that the individuals responsible for the adverse action knew of the plaintiff's protected conduct at the time they acted."). Then, "[t]o establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir.2007). For temporal proximity to establish a causal connection, "the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive ...." *Krouse v. American Sterilizer Co.,* 126 F.3d 494, 503 (3d Cir.1997).

The record does not suggest that the decisionmakers responsible for her March 2019 termination knew of her verbal or written complaints. Even if she could establish their knowledge, Jenkins cannot establish a causal connection between her March or April 2017 (verbal) and May 2017 (written) complaints and her March 2019 termination. The two-year period between her complaints and her termination is not so "unusually suggestive" of a link that Jenkins "may rely on the temporal proximity" between the events. *Moore v. Sec'y U.S. Dep't of Homeland Sec.*, 718 F. App'x 164, 166 (3d Cir. 2017) (quoting *Daniels*, 776 F.3d at 193); *see also Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding two days unduly suggestive of causation). Being unable to rely on temporal proximity to establish a link, she must identify other evidence to show a causal connection.

No pattern of antagonism coupled with timing exists in the record to establish a causal link. Neither set of proposed discharges and reinstatements—the April 2017 proposed discharge and July 2017 Last Chance Agreement reinstating Jenkins; and the August 2017 proposed discharge and January 2018 reinstatement—appears to be related to Jenkins's complaints. Both sets of disciplinary actions—and Jenkins' ultimate termination—were SEPTA's responses to her violations of SEPTA rules and policies. Without any evidence of a causal connection between her purportedly protected activity and her 2019 termination, Jenkins' retaliation claim cannot survive summary judgment.

### B. Due Process violation

Jenkins alleges she was "discharged without due process." Am. Compl. at 4. We apply a two-step inquiry to procedural due process claims: (1) whether the plaintiff has "a property interest protected by procedural due process," and (2) "what procedures constitute 'due process of law.'" *Schmidt v. Creedon*, 639 F.3d 587, 595 (3d Cir. 2011) (quoting *Gikas v. Wash. Sch. Dist.*, 328 F.3d

11

731, 737 (3d Cir.2003)). Jenkins clearly has a constitutionally protected interest in not being terminated from her position as a train operator. *See Dykes v. Se. Pennsylvania Transp. Auth.*, 68 F.3d 1564, 1570 (3d Cir. 1995).

To pass constitutional muster, SEPTA's deprivation of Jenkins' property should be preceded by notice and opportunity to be heard. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985). "Public employees are entitled to 'notice of the charges against [them], an explanation of the employer's evidence, and an opportunity to present [their] side of the story' before their employment is terminated." *Bond v. City of Bethlehem*, 505 F. App'x 163, 167 (3d Cir. 2012) (quoting *Loudermill*, 470 U.S. at 546). Under *Loudermill*, the employee must be given an opportunity for a hearing before [she] is deprived of any significant property interest." 470 U.S. at 542.

In Jenkins' case, SEPTA, by all accounts, SEPTA followed its typical grievance/arbitration procedure. *See generally* Am. Compl. In fact, before her termination, she partook in three levels of the grievance procedure required by the CBA between SEPTA and the Union. *Dykes*, *See* 68 F.3d at 1565 ("[W]here an adequate grievance/arbitration procedure is in place and is followed, a plaintiff has received the due process to which [she] is entitled under the Fourteenth Amendment."). The availability of arbitration, which the union declined to pursue given its doubts about the strength of Jenkins' claims, alone satisfied due process. *See Harris v. Se. Pa. Transp. Auth.*, 205 F. App'x 39, 41 (3d Cir. 2006). Nonetheless, the records of the grievance procedures show Jenkins, via her Union representative, had the opportunity to be heard and to present evidence, and did so. Jenkins' due process claim does not survive summary judgment.

### C. Wrongful Discharge

Jenkins' allegations that the rule violation leading to her termination was "not a dischargeable offense," liberally construed, make a wrongful discharge claim. *See* Am. Compl. at 4. Jenkins' claim cannot survive summary judgment. Under Pennsylvania law, at-will employees may sue former employers for wrongful discharge in violation of public policy. *See Coppola v. Jneso-Pocono Med. Ctr.*, 400 F. App'x 683, 684 (3d Cir. 2010). The common law cause of action aims "to provide a remedy for employees with no other recourse against wrongful discharge." *Id* (citing *Phillips v. Babcock & Wilcox*, 349 Pa.Super. 351, 503 A.2d 36 (1986)). But "union employees enjoy contractual protection against discharge without 'proper cause' as part of their collective bargaining agreement" and thus have other recourse against wrongful discharge. *Id.* As a union employee subject to a collective bargaining agreement, Jenkins may not pursue a wrongful discharge claim against her former employer. *See id*. Accordingly, her wrongful discharge claim does not survive summary judgment.

### IV. CONCLUSION

For the foregoing reasons, we will grant SEPTA's motion for summary judgment. An appropriate order follows.

BY THE COURT
/s/ Chad F. Kenney
_____
CHAD F. KENNEY, JUDGE